Allen Gene BUNDRICK et al.,
Appellants,

v.

The FIRST NATIONAL BANK OF JACKSONVILLE, Texas, Appellee.

No. 1141.

Court of Civil Appeals of Texas, Tyler.

June 8, 1978.

Rehearing Denied July 21, 1978.

Paul Smith, Dennis G. Brewer, Inc., Irving, Don Krause, Bayne, Snell & Krause, San Antonio, for appellant.

Gordon S. Thrall, Norman, Hassell, Spiers, Holland & Thrall, Jacksonville, for appellee.

MOORE, Justice.

This is a suit on a note involving primarily the application of Chapter 4 of the Texas Consumer Credit Code, Tex.Rev.Civ.Stat. Ann. art. 5069–4.01 et seq., hereinafter referred to as the "Code."

Appellee, The First National Bank of Jacksonville, Texas, brought suit against appellants, Allen Gene Bundrick and Jean Doughtie, to recover upon a promissory note executed on March 11, 1976, in the amount of $5,820. Appellants answered with a general denial and filed a counterclaim alleging that the interest charged by the bank was usurious. They further alleged that the note contained various provisions which constituted violations of the Code and that appellee's sale of appellants' automobile was in violation of Tex.Bus. & Comm.Code sec. 9.504(c). Appellants prayed for a recovery of double the amount of the interest and default charges contracted for and a reasonable attorney's fee as provided in sec. 8.01 of the Code,[1] and also sought recovery under the penalty provisions of sec. 9.507(a) of the Tex.Bus. & Comm.Code. After a trial before the court, sitting without a jury, the trial court rendered judgment in favor of the bank for the amount found to be due and owing on the note, together with interest at the rate of 14% per annum and an attorney's fee in the amount of $1,000. As to appellants the court rendered a take-nothing judgment on their counterclaim. Appellants duly perfected this appeal.

We reverse and remand.

At the request of appellants, the trial court filed findings of fact and conclusions of law. A statement of facts also accompanies the record.

The record reveals that on May 3, 1974, appellants executed a note and security agreement to the bank in the amount of $6,630, in order to purchase a 1973 Plymouth automobile. Not being able to meet their monthly payments, appellants returned the automobile to the bank in December 1974. After repairing the automobile the bank made an effort to sell it and, upon being unable to sell the same at a private sale, finally turned it over to a concern which was in the business of conducting auction sales of used cars. The automobile was sold at public auction for $1,262.50. After crediting such amount on the note in default, together with expenses for repairs, the bank executed a renewal note in the amount of $5,909 on March 7, 1975. This note was subsequently renewed on March 11, 1976, and is the one made the basis of this suit. This final note, number 8046, is in the amount of $5,820. It is payable in twelve consecutive monthly installments of $150 each, commencing on or before April 30, 1976, with a final "balloon" payment maturing on March 10, 1977. It recites that the interest thereon had been pre-computed and was included in the face amount of the note as add-on interest. Un-

---

1. Section 8.01 was revised and enlarged in 1977. Plaintiffs, however, brought suit to recover under the original penalty provisions enacted in 1967, to-wit:

 "Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are greater than the amount authorized by this Subtitle, or by failing to perform any duty specifically imposed on him by any provision of this Subtitle, shall forfeit to the obligor twice the amount of interest or time price differential and default and deferment charges contracted for, charged or received, and reasonable attorneys' fees fixed by the court, provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

der the "STATEMENT OF LOAN" column the note recites: Previous balance renewed —$5,119; Termination fee—$2.00; other— $10.00; Subtotal—$5,131; Credit life insurance—$68.00; Amount financed—$5,199.00; Finance charge—$621.00; Total of payment —$5,820.00; Annual percentage rate—14%. No payments were ever made on the note. The bank accelerated maturity by filing suit on the note November 9, 1976.

Appellants contend in their first and second points that the loan contract in question is usurious and that the bank therefore is not entitled to recover any interest thereon. They further contend that the judgment rendered by the trial court is erroneous because it awards the bank a recovery for usurious interest. Specifically, they argue that the trial court erred in awarding the bank the full face amount of the note, because after acceleration the bank breached its duty to rebate the unearned interest thereon, causing the note to become usurious. They also argue that the provision in the loan contract allowing the bank to charge 14% interest on past due principal and interest after default amounts to a violation of sec. 4.01(5) of the Code, which permits only a one-time default charge of five cents on a dollar.

The note in question provides that upon acceleration "the unpaid principal of this note and all accrued interest shall at once become due and payable and shall bear interest at the highest legal contract rate from the date of such default . . . ." After appellants defaulted on the first seven payments, the bank accelerated maturity by filing suit on the note November 9, 1976. In its petition the bank did not seek to recover the full amount of the note, but sought only to recover for the principal in the sum of $5,199.00, plus interest thereon at the rate of 14% per annum from the date of the making of the note. Nowhere in its petition did the bank seek to recover the full $621.00 finance charge stipulated in the note. Furthermore, the bank could not have brought suit for the full face amount of the note because, according to the terms of the contract, only the unpaid principal

and the *accrued* interest would become due and payable upon acceleration. Since the loan contract does not permit the bank to accelerate the unearned interest charged in the note, the acceleration of the note would not result in usury. Hence, the contract is not in violation of the Code. See *Southwestern Investment Co. v. Mannix,* 557 S.W.2d 755, 765 (Tex.1977). As the bank only sought judgment for the unpaid principal and accrued interest thereon, the contention that the bank breached a duty to rebate unearned interest is without merit.

We are not in accord with appellants' contention that the bank contracted for usurious interest on the ground that the note provided that "all past due principal and interest shall bear interest from the date it is due until paid at the highest legal contract rate." The highest legal contract rate of interest on a loan is 10%. Tex.Rev. Civ.Stat.Ann. art. 5069–1.04. Appellants argue that the maximum amount allowed by the Code after default is five cents for each one dollar of any scheduled installment which the debtor fails to pay. We do not agree. The statutory provision relied on by appellants, sec. 4.01(5), authorizes a lender to make a one-time charge of five cents for each dollar of any installment which the debtor fails to timely pay. This provision, however, does not affect the right of a lender to contract for interest after maturity. It is generally held that parties to a contract validly may agree that past due principal and interest shall bear the highest lawful rate, whether the obligation matures in the ordinary course according to the terms thereof, or by reason of acceleration. 45 Am.Jur.2d *Interest and Usury* sec. 65, p. 61. Such a provision here does not amount to a delinquency charge for a late payment, but rather an interest charge for the detention of money. It has been held that this type of provision does not render the contract usurious. *Travelers Ins. Co. v. Lee,* 94 S.W.2d 777 (Tex.Civ.App. —Waco 1936, no writ history).

We are of the opinion, however, that the judgment is erroneous. The bank sought judgment only for the principal in

the amount of $5,199 plus accrued interest from date until judgment. The trial court nevertheless granted judgment on the note for $5,816.71 (the face amount less a $3.29 overcharge on insurance premiums) thereby treating the note as if the same had matured by its own terms on March 10, 1977. The court then granted the bank interest at the rate of 14% from March 11, 1977, to date of judgment. In so doing the court ignored the fact that the bank accelerated maturity by filing suit on November 9, 1976. Under the pleading and the loan contract, we think the court should have granted the bank judgment for the $5,199 principal sued for, plus accrued interest at the rate of 14% per annum until November 9, 1976 (the date of acceleration) plus the highest legal contract rate of 10% thereafter until judgment. Further, we think evidence should have been adduced as to the specific amount of the pre-judgment interest so that the court could have entered a judgment for a sum certain. Ordinarily, a reformation of the judgment would be in order, but since the judgment must be reversed for the reasons hereinafter stated reformation is not necessary.

By points three and four appellants contend that the trial court erred in denying them a recovery on their counterclaim because the bank contracted for attorney's fees in the event of default in violation of sec. 4.01(7) of the Code. Appellants argue that the Code prohibits contracting for attorney's fees except for those assessed by a court. They contend that by contracting in note 8046 that the appellants were to pay all costs of collection in the event the note was placed in the hands of an attorney for collection and were to pay attorney's fees of not less than 15% in the event the note was sued upon or established in any court, probate or bankruptcy proceeding, the bank violated the Code and was therefore subject to the penalty provisions provided in sec. 8.01.

The provision of the note providing for attorney's fees reads as follows:

"It is further agreed that if this note shall be placed in the hands of an attorney for collection or for the purpose of being sued upon or established in any manner in any Court, probate or bankruptcy proceeding, then in either of said events the makers, endorsers, and guarantors hereof promise to pay all costs of collection, including a reasonable attorney's fee to be not less than fifteen percent (15%) of the amount then due and payable."

Appellants contend that contracting for attorney's fees in this manner is in violation of sec. 4.01(7) of the Code, which reads as follows:

"*In addition to the authorized charges provided in this Chapter no further or other charge or amount whatsoever shall be directly, or indirectly, charged, contracted for, or received*: This includes (but is not limited by) *all charges* such as fees, compensation, bonuses, commissions, brokerage, discounts, expenses and every other charge of any nature whatsoever, whether of the types listed herein or not. Without limitation of the foregoing, such charges may be any form of costs or compensation whether contracted for or not, received by the lender, or any other person, in connection with (a) the investigation, arranging, negotiation, procuring, guaranteeing, making, servicing, collecting or enforcing of a loan; or (b) for the forbearance of money, credit, goods or things in action; or (c) for any other service or services performed or offered. However, the prohibition set out herein shall not apply to amounts actually incurred by a lender as court costs, *attorney fees assessed by a court . . . .*" (Emphasis supplied.)

Our courts have traditionally recognized the right of the parties to contract for attorney's fees in the event of default. At the time sec. 4.01(7) became the law, the only method of charging or collecting for attorney's fees was by contract.

The statute in question prohibits a lender from charging, contracting for or receiving any fees whatsoever in connection with the enforcing or collecting of a loan. Having laid down such prohibitions the Legislature,

no doubt, recognized that such language might be construed to prevent a lender from receiving attorney's fees which were awarded by a court. To remedy the situation the Legislature made it clear that the prohibitions were not intended to apply to attorney's fees when it declared that the prohibitions mentioned in the statute do not apply to a lender who collected on a judgment for attorney's fees assessed or awarded by a court. Contrary to appellants' contention, we do not believe the proviso means that the Legislature intended to prohibit all contracts for attorney's fees except for those fees "assessed by a court."

■ It must be presumed that the Legislature, in enacting the proviso, recognized the right of the parties to contract for attorney's fees in some amount because, in the absence of a contract, a court would not be authorized to award attorney's fees, and there would be no necessity for such proviso. Despite this, the Legislature did not undertake to regulate the terms of the contractual arrangement. No restriction was placed on the right to contract. Just because the Legislature provided that a lender could receive attorney's fees assessed by a court without being liable for a penalty, it does not mean the Legislature intended to say that all contracts for attorney's fees must be limited in amount to that "assessed by a court." Consequently, we think the Legislature intended to leave the parties free to contract for a specified amount of attorney's fees. The result is that even though the statute leaves the lender free to contract for some specified amount of attorney's fees, he is prohibited from charging or receiving the fees contracted for, unless such fees are assessed or rendered by a judgment of the court. Thus, we do not believe the bank's contract for attorney's fees violates the statute, because there is no legislative mandate fixing the amount that may be contracted for. The statute is penal in nature and, for that reason, we would not be authorized in expanding its scope by judicial interpretation to hold that all contracts not limited to attorney's fees "assessed by a court" constitute a violation of the Code.

We are of the opinion, however, that in a different respect the contract is in violation of sec. 4.01(7), as contended by appellants. That is, the bank contracted for "all costs of collection" over and above the stipulated attorney's fees. The statute prohibits contracting for costs of collection other than attorney's fees. Consequently, this provision in the contract renders the bank liable for the statutory penalties provided in sec. 8.01.

■ In their fifth point, appellants contend that the court erred in denying them a judgment on their counterclaim, because in note 8046 the bank made unauthorized charges of $10.00 to cover mailing costs and $2.00 for a coupon book in violation of sec. 4.01(7), supra. The note shows on its face that such extra charges were made, and the bank does not argue to the contrary. We sustain this contention.

Under the facts in the present case, the only charges authorized under the provisions of sec. 4.01 et seq. are interest charges and late charges, as well as premiums on credit life insurance, court costs, attorney's fees, filing fees, storage and sale expenses and fees for noting a lien. Neither the $10.00 charge nor the $2.00 charge is authorized by the statute. Not being authorized by sec. 4.01 et seq., it follows that the making of such charges constitutes a violation of sec. 4.01(7) which prohibits unauthorized charges, subjecting the bank to liability under sec. 8.01.

Under points six through eight appellants contend that the trial court erred in denying them a judgment on their counterclaim because the bank made an overcharge of $3.29 on life insurance premiums. We find no merit in this contention.

■ Section 8.01 provides that there shall be no liability for a violation of Subtitle 2 which results from an accidental and bona fide error. It is undisputed that the bank made the alleged overcharge. While the bank did not plead that the overcharge was a bona fide error the issue appears to have been tried by consent. Ronny Lee,

Vice President of the bank, testified without objection that the $3.29 overcharge was the result of an error made by the lending officer who handled the transaction. The trial court found that the overcharge was inadvertently made and amounted to a bona fide error. Appellants were credited with the amount of the overcharge in the judgment. As we view the record the testimony of the bank's witness constitutes some evidence of probative force showing that the overcharge was the result of a bona fide error. The cases are legion holding that if there is any evidence of probative force to support the trial court's findings, such findings will not be disturbed on appeal. Points six through eight are therefore overruled.

By the ninth point appellants contend that the court erred in denying them a judgment upon their counterclaim because the bank failed to disclose, in dollars and cents, the total amount of all the charges included in the loan in violation of sec. 4.03(1)(h) of the Code.

Sec. 4.03 of the Code provides that when a loan is made under this chapter the lender shall deliver to the borrower a copy of the note and all other documents signed by the borrower and a statement in writing in the English language showing the following:

"(h) the total amount, in dollars and cents, of all the charges included in the amount of loan.

"If the note or loan contract shows the information required above, a copy of such note or loan contract may be delivered rather than a separate statement."

 Thus, a lender may comply with the disclosure requirement either by making such disclosure on the note itself, or by delivering to the borrower a statement in writing in the English language making such disclosure. While the note in question fails to make such disclosure, there is no evidence showing that the bank failed to furnish appellants a separate statement in writing in the English language showing the total amount in dollars and cents of all the charges included in the amount of the loan. Consequently, appellants failed to discharge their burden of proving that the bank failed to comply with the statute. The point, therefore, is overruled.

By the tenth and final point, appellants contend that the trial court erred in denying them a recovery on their counterclaim, because the bank failed to give them notice of the time and place of the sale of the automobile in violation of Tex.Bus. & Comm.Code sec. 9.504(c). Appellants maintain that such violation entitles them to recover under the penalty provisions set forth in sec. 9.507(a) of the Tex.Bus. & Comm.Code. We find no merit in this contention.

The evidence shows that after appellants fell in arrears on their payments on the original note, they delivered the automobile back to the bank, which advertised it for sale but could not find a buyer. The bank then delivered the automobile to a concern known as the East Texas Automobile Auction, where it was sold at a public auction for the sum of $1,262.50. It is undisputed that the bank did not give appellants notice of the time and place of the sale. After the sale the bank credited appellants' note with the amount received and called on appellants for the payment of the deficiency. Rather than paying the deficiency, appellants executed a renewal note, which over a year later was renewed a second time and made the basis of this suit.

Sec. 9.507(a) of the Tex.Bus. & Comm. Code provides as follows:

" . . . If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any *loss* caused by a failure to comply with the provisions of this subchapter. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt . . ." (Emphasis supplied.)

The bank adduced testimony showing that the East Texas Automobile Auction,

where the automobile was sold, was in the business of selling used cars on a regular basis and conducted a public sale each week which was attended by many bidders throughout the area. Further, the bank adduced testimony showing that the price received at the sale represented the cash market value of the automobile. Appellants did not offer any evidence tending to show that the manner or method of the sale of the automobile was commercially unreasonable, or that the price received for the automobile was not the best available price. Neither did they offer any evidence as to cash market value of the automobile at the time of sale.

In short, appellants did not offer any proof showing that they sustained any loss or damages by reason of their failure to receive proper notice of the sale. Under sec. 9.507(a) the recovery of damages is measured by the economic loss sustained by reason of a failure to comply with the provisions of the subchapter. We hold appellants failed to discharge their burden of proving that the lack of notice caused them to suffer any loss.

It may be argued that under the statute, where the collateral is consumer goods, no proof of loss need be shown in order to recover penalties for the failure to give proper notice. Consumer goods is defined by sec. 9.109(1) of the Tex.Bus. & Comm.Code as goods "used or bought for use primarily for personal, family or household purposes." We find no evidence whatsoever in this record showing what the automobile was bought or used for. Consequently, appellants must be held to have failed to discharge their burden of establishing that the automobile was in fact consumer goods. See *Hensley v. Lubbock National Bank,* 561 S.W.2d 885, 892 (Tex.Civ.App.—Amarillo 1978, no writ).

Further, we think appellants waived their right to complain of the lack of notice by voluntarily executing note number 8046 covering the deficiency due and owing on the previous underlying notes, with full knowledge of the fact that the bank had sold the automobile without proper notice to them over a year before.

For the foregoing reasons we hold appellants cannot recover on their counterclaim for their failure to receive proper notice of the sale. The tenth point is overruled.

This brings us to the question of what disposition should be made of the case. We recognize the rule that this court has the duty to render such judgment as the court below should have rendered. Rule 434, Tex.R.Civ.P. We also recognize the rule that where the record shows that the plaintiff is entitled to recover and defendant is likewise entitled to recover on a counterclaim, as here, the court should strike a balance and render a judgment for the net amount in favor of one of the parties. 4 McDonald Texas Civil Practice, sec. 17.09.3, pp. 69–70 (1971). Upon the record before us, we have concluded that there is no way that this court can strike a balance and render judgment for one of the parties due to the fact that: (1) the trial court erroneously refused to render judgment in favor of appellants on their counterclaim for the penalty and a reasonable attorney's fee as provided for in sec. 8.01 of the Code, and (2) the approach used by the court in rendering the judgment on the note was erroneous, as explained above, and as a result the prejudgment interest thereon must be re-computed and a new judgment entered thereon. Because of the factual matters left to be determined, which can only be made by the trial court, we are not in a position to render a judgment in the case.

There being reversible error in the case, and absent a proper basis for rendition of judgment by this court, we have concluded that the case was not fully developed and that, in the interest of justice, the entire case should be reversed and remanded to the trial court.

Reversed and remanded.