**WHITEHEAD UTILITIES, INC., et al., Appellants,**

v.

**EMERY FINANCIAL CORPORATION, Appellee.**

**No. 09 84 302 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 29, 1985.

March H. Coffield, Jasper, for appellants.

Charles K. Kebodeaux, Beaumont, Joe Bob Golden, Jasper, for appellee.

OPINION

PER CURIAM.

Suit on a lease agreement and guarantee. The lease agreement related to the purchase financing of three large natural gas compressors. Emery Financial Corporation (hereafter "Emery") filed suit against Whitehead Utilities, Inc. (hereafter "Utilities"), as lessee of certain natural gas compressors with attached equipment. Marvin and Betty Whitehead were sued as guarantors. Emery sought to recover damages for default on installment payments due under the lease agreement. Emery sued for prejudgment interest and attorneys' fees.

Upon Emery's motion for summary judgment and the responses thereto, the District Court entered judgment against Utilities and Marvin Whitehead (hereafter

"Whitehead"). Betty Whitehead was nonsuited.

The lease agreement provided the monthly rental payments would be made to Emery; it also provided that overdue or late rental installments would bear interest at the highest rates which the appellants were permitted to pay under applicable law. The lease was dated March 22, 1983, and Emery alleged that on April 26, 1983, Utilities began a series of defaults under the terms of the lease agreement by failing to pay the monthly rental installments when due.

Under *TEX.R.CIV.P. 166–A*, the Court, after notice, conducted a hearing on the summary judgment motion and considered among other matters, the motions, pleadings, affidavits, admissions and interrogatories, and other summary judgment proofs. At the conclusion of the hearing, Emery recovered from Utilities and Whitehead, jointly and severally, $203,942.70 for accrued and unpaid rental installments, as well as the present value of the future rentals called for by the lease agreement after discount. Additionally, Emery recovered $19,143.63 in prejudgment interest, as well as $18,500.00 attorneys' fees. Emery was to recover an additional $2,500.00 if appealed to the Court of Appeals. The judgment was signed March 16, 1984. The prejudgment interest was calculated at the rate of 18% per annum. Remittiturs were filed concerning the attorneys' fees, reducing the award to $2,678.53 total. The remittiturs comply with *TEX.R.CIV.P. 439*. Hence, the judgment was reduced to $228,264.86, plus costs. The remittitur reduced and decreased the attorneys' fees by the amount of $15,821.47.

The appellants do not attack or challenge in any manner the principal amount of the judgment. They do challenge the prejudgment interest and the *previous attorneys' fees award.*

The appellants contend that the award of 18% prejudgment interest was error, and that, as a matter of law, the prejudgment interest should have been limited to 6% pursuant to *TEX.REV.CIV.STAT.ANN. art. 5069–1.03* (Vernon Pamph. Supp. 1971 to 1985). Appellants argue that the terms and wording of the lease agreement did not provide for a *specific rate of prejudgment interest* expressed as a percentage; hence, 6% would be the correct rate because this issue, appellants say, is controlled by *Art. 5069–1.03.* We disagree. Emery counters saying that 18% per annum is the correct figure because the lease agreement actually provided for prejudgment interest at the "highest contract rate of interest which Appellee may charge Appellant under applicable law...."

■ Paragraph 26 of the lease agreement provides in relevant part:

"Any amounts required to be paid by Lessee pursuant to this Lease, and not paid when due shall bear interest at the rate (compounded monthly and based upon a year having 365 or 366 days as the case may be, actual day months) of the highest contract rate of interest Lessor may charge Lessee under applicable law.... Upon assessment by Lessor, Lessee shall also pay as an additional service and overhead charge, but not as interest an amount equal to $75.00 for any late payment...."

Apparently Emery has made no effort to collect the $75.00 late payment. We hold that the language in Paragraph 26 invokes *TEX.REV.CIV.STAT.ANN. art. 5069–1.04* (Vernon Pamph.Supp.1971 to 1985) as the controlling statute.

During material times, *Article 5069–1.04,* as shown by proper summary judgment proof, provided for the "highest contract rate" or maximum contract rate; 18% per annum was proved by documentary evidence. We quote from *Bundrick v. First National Bank of Jacksonville,* 570 S.W.2d 12, 15 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.):

"The note in question provides that upon acceleration 'the unpaid principal of this note and all accrued interest shall at once become due and payable and shall bear interest at the highest legal contract rate from the date of such default....' "

The Court in *Bundrick, supra,* relied upon *TEX.REV.CIV.STAT.ANN. art. 5069–1.04* allowing the highest legal contract rate of interest. We quote further from *Bundrick, supra* (570 S.W.2d at 15–16),

"It is generally held that parties to a contract validly may agree that past due principal and interest shall bear the highest lawful rate, whether the obligation matures in the ordinary course according to the terms thereof, or by reason of acceleration. 45 Am.Jur.2d *Interest and Usury* sec. 65, p. 61. Such a provision here does not amount to a delinquency charge for a late payment, but rather an interest charge for the detention of money. . . .

". . . Under the pleading and the loan contract, we think the court should have granted the bank judgment for the $5,199 principal sued for, plus accrued interest at the rate of 14% per annum until November 9, 1976 (the date of acceleration) plus the highest legal contract rate. . . ."

At material times in this instant case, *TEX.REV.CIV.STAT.ANN. Art. 5069–1.04* provided substantially that the parties to a written contract may agree to and stipulate any rate of interest that does not exceed an annualized or quarterly ceiling based on the average of the computations as computed by the Consumer Credit Commissioner. The applicable computer dates were December 1, March 1, June 1, and September 1 of each calendar year. Hence, it is statutorily permissible and actually authorized under *Article 5069–1.04* and its various subdivisions for parties to contract at a rate of interest which does not exceed certain rate ceilings calculated and published by the office of the Texas Consumer Credit Commissioner.

This record contains the forty-eight issues of "The Credit Code Letter" published by the Texas Office of Consumer Credit Commissioner, beginning with March 21, 1983, through February 21, 1984. An analysis of these detailed "rate ceilings" demonstrates that there was no error in allowing the 18% per annum prejudgment interest as an item of recovery in behalf of Emery. This finding by the trial court is authorized by *subsection (f) of Article 5069–1.04.* This record shows that *Article 5069–1.03* is not the governing statute. *Article 5069–1.04* was in full force and effect at the time the appellants and appellee entered into the lease agreement.

No inequitable results are brought about. It is abundantly clear that the agreement of the parties was for the highest permissible contract rate. The defaults started one month after the parties agreed. Clearly it was not the 6% rate of *Article 5069–1.03* as advanced in the appellants' brief. Merely because no *numerical rate* of interest is expressed does not make *Article 5069–1.03* the governing statute. When the parties agreed to a standard by which a rate of interest can be determined by reasonable calculations based upon "The Credit Code Letter", as is our case here, then that standard makes inapplicable *Article 5069–1.03* and enthrones as the sovereign governing statute *Article 5069–1.04.*

*Article 5069–1.04(k)(3)* specifically authorizes a trial court to take full judicial notice of the interest rate ceilings issued by the Consumer Credit Commission under *Article 5069–1.04.* This subpart provides:

"Any court may take judicial notice of the ceilings, and related information, caused to be published in the Texas Register by the consumer credit commissioner pursuant to this Article and of the information published pursuant to Article 2.08 of this Title."

As an additional authority for the trial court taking such judicial notice, see *TEX. R.EVID. 201.* With meticulous regularity and completeness, Emery has introduced into this record summary judgment proof containing all of the notices and credit code letters from the date of acceleration through the date of the judgment. The trial court properly awarded prejudgment interest at the rate of 18% per annum in the amount of $19,143.63. We find no error, reversible or otherwise, in the prejudgment interest award.

463

Reviewing and analyzing the entire record before us, and bearing in mind the remittitur filed in the amount of $15,821.47 which reduced the award of attorneys' fees to $2,678.53, we find the attorneys' fees to be reasonable, necessary and amply supported by competent and legally sufficient summary judgment evidence. The amount in controversy, the large amount of the judgment itself, the nature of the legal services, the length and complexities of the lease agreement, the instrument of guarantee, and the responsibilities in such litigation necessarily incumbent upon the trial lawyers are among only some of the factors that the trial court was authorized to consider and determine. They were appropriate, relevant, and expertly drawn requests for admissions of fact and requests for the genuineness of documents. We need not summarize every pleading of every type in the case, nor every act performed by Emery's advocate. There was a motion for continuance by the appellants. There were excellent affidavits filed. There is simply no error in allowing the attorneys' fees in the amount after the generous, benevolent remittitur. *See Espinoza v. Victoria Bank & Trust Co.,* 572 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Knopf v. Standard Fixtures Co., Inc.,* 581 S.W.2d 504 (Tex. Civ.App.—Dallas 1979, no writ). We, at the intermediate appellate level, are to look to the entire record in light of all of the evidence, proof, pleadings, hearings, as well as the work on the motion for summary judgment with the necessary supporting affidavits. We find and hold that the attorneys' fees for this appeal are reasonable, necessary, and proper.

There is another compelling reason for affirming the award of attorneys' fees. The appellants simply did not controvert or effectively raise a fact issue as to the reasonableness of the attorneys' fees. *See TEX.R.CIV.P. 166-A.* Appellants did not in seriousness controvert the amount of the attorneys' fees, nor have they made any real attack on the attorneys' fees for this appeal. Both briefs are ably written. It is obvious that they are the result of scholarly research. We find no error and the judgment after the remittitur is in all things affirmed.

AFFIRMED.