C.B. DODSON, Jr., Individually and as Independent Executor of the Estate of C.B. Dodson, Sr., Deceased, and C.B. Dodson, Inc., a Texas Corporation, Appellants

v.

CITIZENS STATE BANK OF DALHART, Appellee.

No. 07–84–0253–CV.

Court of Appeals of Texas, Amarillo.

Jan. 2, 1986.

Rehearing Denied Jan. 21, 1986.

Philip R. Russ, Amarillo, for appellants.

Culton, Morgan, Britain & White, Don L. Patterson, Frank A. Hunold, Jr. and William A. Hill, Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellants C.B. Dodson, Jr., individually and as Independent Executor of the Estate of C.B. Dodson, Sr., deceased, and C.B. Dodson, Inc. bring this appeal from a judgment in favor of appellee Citizens State Bank of Dalhart, a corporation. We affirm.

The instant suit was originally brought by appellee against C.B. Dodson, Jr. The suit was brought to collect on a note in the original principal sum of $291,860.89 with accrued pre and post maturity interest. In his answer, Dodson claimed that the note was usurious and also asserted various other affirmative defenses. In a separate instrument denominated as "Defendant's Third Amended Counterclaim," filed June 8, 1984, all appellants sought recovery against appellee because of an asserted breach of fiduciary relationship and other maleficent acts. Jury trial commenced on

June 18, 1984 at which, by three witnesses, its senior vice-president and trust officer and its two attorneys, appellee presented its case in chief. Although appellants did cross-examine appellee's witnesses, they chose to present no evidence at trial. The court then instructed a jury verdict and, based upon that verdict, rendered the judgment of which appellants complain.

In attacking the judgment, appellants raise fourteen points of asserted error. In points one, two, three, five, and seven, they argue the trial court erred in: (1) instructing a verdict since the undisputed evidence proved that the note in question was usurious; (2) rendering judgment against appellant C.B. Dodson, Jr. for a sum of $398,804.47, which included post maturity interest, figured at a rate of 13.5% maturity when, as a matter of law, the maximum permissible post maturity rate was 6% per annum; (3) denying appellants' motions for instructed verdict and for judgment non obstante verdicto because appellee "charged," and, in some cases "received" post maturity interest at the rate of 13.5% per annum, a rate, appellants say, was in excess of two times the allowable rate; and (4) holding that appellant C.B. Dodson, Jr. was not, as a matter of law, entitled to judgment forfeiting the principal of the note and in failing to allow recovery by all appellants of "two (2) times all interest and other charges, plus three (3) times all usurious interest charges and the recovery of reasonable attorneys fees."

The thrust of appellants' argument under points one, two, three, five, and seven is that the 13.5% post maturity interest rate admittedly charged by appellee was usurious as a matter of law because it was in excess of two times the permissible rate. It is uncontroverted, and appellants do not question, that C.B. Dodson, Jr. executed the note and that appellee was the holder of the note when the principal and interest became due and owing on April 16, 1983 or that the note provided for interest from its date until maturity at the rate of 13.5%. The note further provided that "[a]ll past due principal and interest shall bear inter-est at the highest legal rate." It is also uncontroverted that appellee charged post maturity interest at the rate of 13.5% per annum.

Appellants argue that the quoted language was not sufficient to establish an agreed specified rate of post maturity interest. Therefore, they reason, Tex.Rev. Civ.Stat.Ann. art. 5069–1.03 (Vernon Pamp. Supp. 1971–1985) is applicable. That article provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Based on that premise, appellants say that the 13.5% post maturity interest admittedly charged by appellee was in excess of twice the allowable rate, thereby entitling them to their affirmative defenses and counter-claims of usury.

Appellants' basic premise that the provision for post maturity interest "at the highest legal rate" is not a specification of a definite interest rate is erroneous. Parties may agree, as did appellee and C.B. Dodson, Jr., that past due principal and interest will bear interest at the highest legal rate. *Bundrick v. First Nat. Bank of Jacksonville*, 570 S.W.2d 12, 15 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). *See also Whitehead Utilities, Inc. v. Emery Financial Corp.*, 697 S.W.2d 460, 462 (Tex.App.—Beaumont 1985, no writ). Therefore, since the provision for post maturity interest does not expressly entitle appellee to charge interest at a rate greater than that allowed by law, the note is not usurious on its face. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980).

The uncontroverted evidence established that the highest legal rate for which the parties could have contracted, during the relevant period, ranged from 18% to 22.72%. Tex.Rev.Civ.Stat.Ann. art. 5069–1.04 (Vernon Pamp.Supp. 1971–1985); Hightower, *The Current State of Usury*

*Law in Texas*, 14 St. Mary's L.J. 149 (1983). It naturally follows that the rate actually charged, *i.e.*, 13.5%, was not usurious.

■ By points one, three, four, six, and seven, appellants contend that appellee violated the usury statutes by "folding or rolling the C.B. Dodson, Inc. corporate note of $35,000.00 into the Three Hundred Eleven Thousand Four Hundred Eighty-Seven Dollar and $^{30}/_{100}$ ($311,487.30) C.B. Dodson, Jr., personal note." The record reveals that on April 12, 1982, C.B. Dodson, Jr. executed his personal note in the amount of $250,000 payable to appellee, which matured on October 9, 1982. On September 13, 1982, Mr. Dodson, on behalf of C.B. Dodson, Inc., executed a note in the amount of $35,000, which also matured on October 9, 1982.

On November 30, 1982, Mr. Dodson met with representatives of appellee. The only testimony about that meeting was that of Burton Doyle Hanbury, who is a senior vice-president and trust officer with appellee. In preparation for that meeting, appellee had drafted a promissory note in the principal sum of $311,487.30. Mr. Hanbury testified that that figure represented the renewal of the original of Mr. Dodson's personal note, the corporate note, and some $70,000 of additional funds. Dodson refused to execute the note.

When queried as to the reason for the presentation of the note, Hanbury replied that "[w]e were asking Mr. Dodson to do something with our bank about the past due notes and interest at our bank, plus he had some other problems that we knew about that we were trying to get him going again, and we gave him this opportunity for a six-month period of time, and he did not take that up." When further queried about the circumstances, his testimony was that "[w]e asked him to do something with our bank. This was a proposition that we offered to him if he wanted to do it, and that's all." Mr. Dodson refused to execute the note and told Hanbury that "[y]ou know what you have to do; go get after it."

Later that day, appellee offset Dodson's personal accounts, the C.B. Dodson, Sr. estate account, the corporation account, Dodson's special account, and his cattle account and applied them to payment of the $35,000 corporate note and his personal note. Mr. Dodson had signatory authority on each of these accounts. Appellee's representatives had not told Dodson they would take this action prior to doing so.

Later, on December 22, 1982, C.B. Dodson, Jr. executed a note in the amount of $286,042.09, maturing on January 21, 1983. This note was secured by a deed of trust on certain real property not material here. Hanbury testified that $250,000 of the note was in renewal and extension of Dodson's April 12, 1982 note. Of the remainder, $20,048.58 was advanced, deposited in Dodson's personal account, and used to pay the interest on the April 12 note. At Dodson's request, of the $15,993.51 remainder, $14,412.56 was deposited into an account entitled C.B. Dodson Estate, $934.23 was deposited into an account entitled C.B. Dodson Special, and the remainder $646.72, in two deposits, was deposited into an account entitled C.B. Dodson, Jr. Appellants, in their brief, argue that $8,453.84 of the amount borrowed by Dodson was used to replace funds taken by appellee in its offset of the corporate debt. Therefore, they argue, Dodson did not receive or have the use of this amount and it should be considered as an interest charge of 50.55%. However, since the record does not show this application by Dodson, it does not support this particular argument.

On February 15, 1983, the note upon which this suit is based was executed. It was in the principal sum of $291,860.89, was secured by a deed of trust, was due on April 16, 1983, and, to the extent of $286,042.09, was in renewal and extension of the December 22, 1982 note. The remainder, in the amount of $5,818.80, was advanced to C.B. Dodson, Jr. at his request.

Initially, appellants contend that "by folding or rolling the C.B. Dodson, Inc. corporate note of $35,000 into the $311,487.30 C.B. Dodson, Jr., personal note,"

appellee made a usurious charge of interest. In asserting that conclusion, appellants place heavy reliance upon the holding of the Court in *Alamo Lumber Co. v. Gold*, 661 S.W.2d 926 (Tex.1983). In *Alamo*, the Court held that a lender who, as a condition for making a loan, requires that a borrower assume a third party's debt, must include the amount of the third party's debt in the interest computation. While appellants assert the facts in *Alamo* and in this case are analogous, we do not agree. In *Alamo* it was admitted and uncontroverted that the lumber company would not have purchased and extended the note there in question had Gold not assumed her son's bad debt owed to Alamo. In its decision, the Court placed heavy emphasis upon this fact. In the instant case, the only testimony bearing upon that question was that of Hanbury, the essence of which we have quoted. Neither his testimony, the surrounding circumstances, or a combination of the two is sufficient to support appellants' contention. Indeed, as outlined above, the record shows that at a time subsequent to the presentation of the proposed $311,487.30 note, without the requirement of the assumption of the corporate indebtedness, Dodson's indebtedness was renewed and additional funds advanced.

■ In the alternative, appellants argue that by the act of offering the $311,487.30 note, appellee "charged" Dodson a usurious rate of interest within the purview of such cases as *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930) and *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260 (Tex.1977). Again, we disagree. Each of these cases as well as such cases as *Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918 (Tex.1976) are distinguishable from the case here at issue.

In *Windhorst*, the Court pointed out that, in order to trigger statutory usury penalties, one condition must occur, which the Court characterized as "either a contract for, a charge of or receipt of usurious interest." 547 S.W.2d at 261. In the cases

dealing with the charging of usurious interest, as applicable here, the rule is that there must be an underlying absolute obligation that a principal indebtedness be repaid, that being one of the three elements to be proven in order to establish a claim based upon usury. *Rinyu v. Teal*, 593 S.W.2d 759, 761 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

Since, under this record, the $311,487.30 note was in the nature of a proposal, rejected by Dodson, no such obligation was created by that note. Although by virtue of the April 12, 1982 $250,000 note, an obligation did exist, appellants have not contended that that note was usurious. That being true, appellants have failed to establish the requisite of an underlying absolute obligation.

■ Finally, appellants claim that the offsets made by appellee, followed by the inclusion of certain offset amounts in the $286,042.09 promissory note executed by C.B. Dodson, Jr. constituted usury. Initially, we must note that the offsets themselves, if wrongful, would give rise to a cause of action against appellee by the owners of the accounts wrongfully offset. *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528, 531 (Tex.1961); *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas*, 551 F.2d 1346, 1350–51 (5th Cir.1977). Appellants cite no Texas authority, and we have found none, which recognizes a cause of action for usury arising out of such a situation.

Appellants also argue that the fact that amounts totaling $15,933.31 were borrowed by C.B. Dodson, Jr., included in the amount of that note, and deposited by Dodson's direction in the offset accounts, is sufficient to constitute usury. The record shows this was done at Dodson's direction and, as noted above, the only testimony in the record, that of Hanbury, is not sufficient to establish the requisite requirement that it was done as a requirement for the extension of credit by appellee. Appellants' points one through seven are overruled.

In their points eight through eleven, appellants contend that the trial court erred in denying their motions for default judgment, instructed verdict, and for judgment non obstante verdicto.

The pleading upon which appellants base this claim is styled "Defendant's Third Amended Counterclaim" and was filed on June 8, 1984. Although in paragraph two of the instrument, appellants recite that service of process is not necessary "inasmuch as the bank has entered it's [sic] appearance, responded to the First Amended Counterclaim and is before the Court for all purposes," in their brief they say that process was issued and returned upon this counterclaim. No such process is shown in this record. However, since appellee does not contest such service, we will assume, for the purpose of our discussion, that the service was indeed made. Tex.R.Civ.P. 419. Appellants argue that appellee's answer to the counterclaim is in the singular and refers only to C.B. Dodson, thereby making it insufficient to serve as an answer to the counterclaims of C.B. Dodson, Inc., and C.B. Dodson, Jr., as independent executor of the estate of C.B. Dodson, Sr., deceased.

■ Initially, we note that, as far as this record shows, the motion for default judgment was not made until the parties had announced ready for trial, the jury panel had been examined, a trial jury selected, and appellee was about to commence the production of testimony. Under these circumstances, with the parties present, announcements received, and trial commenced by the selection of the jury, even if appellee's pleadings be considered as not sufficient to be a proper answer, appellants had waived their right to a default judgment. *Foster v. L.M.S. Development Co.*, 346 S.W.2d 387, 397 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.).

Additionally, we note that throughout their argument, even though C.B. Dodson, Jr. was the only original defendant, appellants denominate and refer to their cause of action as a "counterclaim." For the purposes of this decision, we will accept that classification. Texas Rules of Civil Procedure 92, effective April 1, 1984, was amended, in material part, as follows:

When a counterclaim or cross-claim is served upon a party who had made an appearance in the action, the party so served, *in the absence of a responsive pleading, shall be deemed to have pleaded a general denial of the counterclaim or crossclaim....* (Emphasis added.)

This amendment was in effect upon the date of the filing of the counterclaim here in question and applicable in this pending litigation. *Hoppe v. Hughes*, 577 S.W.2d 773, 775 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Brooks v. Texas Employers Insurance Association*, 358 S.W.2d 412, 414 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Thus, by the clear and common sense of the rule, if appellee's pleading was not sufficient to constitute a response to the counterclaim, a general denial would be deemed to have been made. This, of course, would have been sufficient to prevent entry of a default judgment.

Moreover, in all of appellee's pleadings, appellants' version of the events which assertedly gave rise to appellants' cause of action were discussed at length and any cause of action based thereon effectively placed at issue. We also note that appellee filed a lengthy document specifically containing "its special exceptions to the Third Amended Counterclaim of Defendant, Counter-Plaintiff C.B. DODSON, JR., Individually and as the Executor of the Estate of C.B. Dodson, Sr. and C.B. Dodson, Inc. (Counter-Plaintiff)" specifically attacking appellants' pleading for its alleged failure to state a cause of action. To hold, under this record, that appellants' counterclaims had not been answered would be to place form above substance and produce an inequitable result. Appellants' points eight through eleven are overruled.

In points twelve, thirteen, and fourteen, appellants attack the action of the trial court in sustaining special exceptions, which, they say, eliminated their opportunity to seek recovery on their various theo-

ries of recovery. The record shows that on April 11, 1984, the trial court sustained special exceptions to appellants' first amended counterclaim. Appellants then filed their second amended counterclaim to which appellee filed exceptions. On May 24, 1984, those exceptions were sustained.

As noted above, on June 8, 1984, appellants filed their Third Amended Counterclaim in which, as appellants say, their allegations were restated in different forms. Again, as noted above, appellee filed special exceptions to this pleading. Although, in their brief, appellants refer to a verbal order of the trial court sustaining these last exceptions, no such order appears in this record.

 We agree with appellee that appellants, in filing their Third Amended Counterclaim restating their allegations, waived any complaint they might have had about the court's action in sustaining exceptions to their former pleadings. *Long v. Tascosa Nat. Bank of Amarillo,* 678 S.W.2d 699, 703 (Tex.App.—Amarillo 1984, no writ); *Town of Port Acres v. City of Port Arthur,* 340 S.W.2d 325, 329 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.). That being the case, the question for our concern is whether the trial court took any reversible action with regard to appellants' Third Amended Counterclaim.

In this connection, the burden is upon an appellant to present to us a record which is sufficiently full to show clearly the action of the trial court and the error of which he complains. Without such a presentation, there is nothing for us to review. *Wichita Building Corp. v. Lenz,* 458 S.W.2d 829, 830–831 (Tex.Civ.App.—Fort Worth 1970, no writ). Moreover, this Court cannot consider out of the record statements contained in the briefs. Since this record does not show what action, if any, the trial court took in regard to any exceptions to appellants' last action pleading, *i.e.,* their Third Amended Counterclaim, nothing is presented for review.

In their fourteenth point, appellants also argue that the trial court erred in granting an instructed verdict on the note in question because there was sufficient evidence to support their theories of negligence on the part of appellee and to support such an affirmative finding if one were made by the jury. We have examined the record and find no error on the part of the trial court. Points twelve, thirteen, and fourteen are overruled.

In final summary, all of appellants' points of error are overruled and, there being no reversible error, the judgment of the trial court is affirmed.