Opinion filed October 31, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00279-CV
_____

## ROYAL B. LONG AND JENNIFER LONG F/K/A JENNIFER BROWN, Appellants
## V.
## FRANK AHLGREN, Appellee

**On Appeal from the 201st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-08-4554**

### MEMORANDUM OPINION

Royal B. Long and Jennifer Long f/k/a Jennifer Brown appeal the trial court's judgment in which it reformed a commercial lease agreement between Jennifer as tenant and Frank Ahlgren as landlord to include a "Net Addendum" and in which it awarded damages and attorney's fees to Ahlgren. We affirm.

In four issues, Appellants challenge the trial court's denial of a motion for partial summary judgment, a motion to strike a supplemental petition, a motion for default judgment, and a motion for directed verdict.

Jennifer found available retail space in Austin and retained a realtor to make an offer to rent it. Jennifer learned that there was another person interested in the space, and she agreed to pay a higher preset rent. As part of the agreement, Royal Long promised to "guarantee Tenant's performance" under the lease and executed a "Commercial Lease Guaranty." Jennifer's realtor explained that, as a term of the lease, Jennifer would be required to pay "triple net" (NNN), which is a term used to describe a commercial tenant's proportionate share of the taxes, insurance, and maintenance of the common areas. The lease executed by Jennifer and Ahlgren, however, did not include the standard NNN addendum.

Jennifer took possession of the premises and paid all rents owing under the lease, including NNN, from July 2007 to January 2008. At that time, Jennifer's attorney reviewed the lease and discovered that the NNN addendum had not been included as part of the agreement. After Jennifer gave notice that she would no longer be paying NNN, Ahlgren asked Jennifer to sign an NNN addendum, but Jennifer sent an email to Ahlgren in which she told him that the lease did not require her to pay NNN and that "[i]t's obvious that [the realtors] have screwed up." In February 2008, Jennifer did not pay NNN, and she reduced her rent payment by the amount of NNN that she had "unintentionally" paid the previous month.

Jennifer later filed for bankruptcy and obtained a discharge of her obligation under the lease. Although Jennifer and Royal attempted to sublet the property, they were unsuccessful, and Jennifer ceased making payments after seventeen months into the sixty-month lease.

Ahlgren brought suit against Royal for breach of contract, and despite her discharge in bankruptcy, Jennifer intervened and asserted several counterclaims against Ahlgren. After the trial court's pleading deadline had passed, the parties deposed the realtors involved in the transaction and learned that Jennifer's realtor

2

specifically discussed NNN as a term of the lease. Thereafter, Ahlgren sought leave of court and amended his pleadings to include a claim for reformation of the commercial lease based on the mutual mistake of the parties in not including the NNN in the written lease after orally agreeing to the term. The jury concluded that the failure to include the "triple net" was the result of mutual mistake and awarded damages to Ahlgren.

In their first issue, Jennifer and Royal challenge the trial court's denial of their joint motion for partial summary judgment. Generally, the denial of a motion for summary judgment is an interlocutory order that, with a few exceptions, is not appealable. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Cleaver v. Cundiff*, 203 S.W.3d 373, 379 (Tex. App.—Eastland 2006, pet. denied). After a trial on the merits, as in the present case, the denial of a motion for summary judgment may not be reviewed on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Cleaver*, 203 S.W.3d at 379. Because the issues in this case were tried on the merits and because there are no exceptions to the general rule, we have no jurisdiction to review the trial court's denial of the motion for partial summary judgment. Jennifer and Royal's first issue is overruled.

In their second issue on appeal, Jennifer and Royal argue that the trial court erred when it denied Royal's motion to strike Ahlgren's second supplemental petition because Royal "demonstrated 'surprise and prejudice' sufficient for the trial court to have denied leave to file the Second Supplemental Petition merely by pointing out that on paper, he is not a party to the Commercial Lease that was sought to be reformed."

Although a party may generally amend its pleadings up to seven days before trial without obtaining leave, the seven-day deadline is not applicable when the trial court sets a different deadline in its scheduling order. TEX. R. CIV. P. 63, 166; *Roskey v. Cont'l Cas. Co.*, 190 S.W.3d 875, 879 (Tex. App.—Dallas 2006, pet.

3

denied). A trial court has "wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse." *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982). We review a trial court's enforcement of its scheduling order for an abuse of discretion. *See Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

An order made at a pretrial conference hearing "shall control the subsequent course of the action." TEX. R. CIV. P. 166. However, Rule 166 also grants authority to the trial court to modify such an order "to prevent manifest injustice." *Id.* "Rule 166 recognizes the fundamental rule that a trial court has the inherent right to change or modify any interlocutory order or judgment until the time the judgment on the merits in the case becomes final." *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 401–02 (Tex. App.—El Paso 2004, no pet.).

The record shows that, in its scheduling order, the trial court originally set a trial date of February 7, 2011, and provided that the deadline to file amended and supplemental pleadings was November 19, 2010. Trial was subsequently rescheduled for April 4, 2011, but the record shows no formal corresponding amendments to the scheduling order respecting supplemental pleadings.

On December 24, 2010, Ahlgren filed a motion for leave to file his second supplemental petition and filed his second supplemental petition, in which he asserted a reformation claim based on mutual mistake. In his motion to strike, Royal asserted surprise and contended that the trial court should not permit the supplemental pleading because "a reformation claim cannot be brought against [Royal] as a matter of law" because he "was [n]ever a party to the Commercial

4

Lease." The trial court issued a letter ruling in which it denied Royal's motion to strike. The trial court reasoned that Royal "has not shown that the supplemental petition provides surprise or prejudice." The trial court further reasoned that "a Motion to Strike is not the proper vehicle to argue that Plaintiff lacks a sufficient legal basis to raise the claim" but that Royal would be allowed to "raise this same argument in a proper vehicle . . . to challenge the ability of Plaintiff to assert a reformation claim against a guarantor."

When the trial court granted the motion for leave and allowed the supplemental pleading, it "implicitly modified" the court's scheduling order. *See Treviño v. Treviño*, 64 S.W.3d 166, 170 (Tex. App.—San Antonio 2001, no pet.) (overruling a motion to strike that challenges a late-filed motion implicitly modifies the docket control order). Ahlgren filed an amended pleading 101 days before trial; this far exceeded the seven-day requirement in the general rule that governs the timing of amended pleadings. *See* TEX. R. CIV. P. 63. Although Royal asserted surprise, he did not claim that he did not receive adequate notice and opportunity to respond to the amended pleading. Moreover, other than a conclusory statement that the supplemental pleading would cause surprise because Royal is not a party to the underlying lease, Royal failed to show how or why the supplemental petition would cause surprise. Consequently, we cannot conclude that the trial court abused its discretion when it granted the motion for leave and allowed Ahlgren to file the supplemental pleading.

Although Royal also argues that his motion to strike was the proper vehicle to challenge the amendment because he "could not have lawfully filed Special Exceptions," we disagree. The trial court's letter ruling expressly stated that Royal was not prejudiced from raising the challenge through the "proper vehicle." Jennifer and Royal's second issue is overruled.

In their third issue, Jennifer and Royal challenge the trial court's order in which it denied Jennifer's motion for default judgment because, "[w]ithout a timely filed and properly responsive Answer to the First Amended Petition in Intervention, . . . the trial court was obligated to grant a Default Judgment." Ahlgren contends that the trial court properly denied the motion for default judgment because Ahlgren was deemed to have made a general denial when he originally appeared in the case.

Under Rule 92, "[w]hen a counterclaim or cross-claim is served upon a party who has made an appearance in the action, the party so served, in the absence of a responsive pleading, shall be deemed to have pleaded a general denial of the counterclaim or cross-claim." TEX. R. CIV. P. 92. The clear language of the rule indicates that, when a party who has appeared either fails to answer a counterclaim or cross-claim or files a defective answer to a counterclaim or cross-claim, the party is deemed to have pleaded a general denial. *Dodson v. Citizens State Bank of Dalhart*, 701 S.W.2d 89, 94 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.).

Here, Ahlgren had already made an appearance at the time that Jennifer intervened and filed her petition; therefore, Ahlgren is deemed to have pleaded a general denial in the absence of a responsive pleading. Moreover, "out of an abundance of caution," Ahlgren filed a general denial on the day before the default judgment hearing. Consequently, we cannot conclude that Jennifer was entitled to a default judgment. *See LeBlanc v. Waller*, 603 S.W.2d 265, 266 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (holding default judgment not proper where defendant did not specifically answer intervenor's petition because defendant's answer to original divorce petition was on file). Jennifer and Royal's third issue is overruled.

In their fourth issue on appeal, Jennifer and Royal argue that the trial court should have granted Royal's motion for a directed verdict because the record

conclusively established that the guaranty agreement was not enforceable under the statute of frauds.

We review the denial of a directed verdict under the same standard that we review a legal sufficiency point. *City of Alamo v. Montes*, 904 S.W.2d 727, 732 (Tex. App.—Corpus Christi 1995, *vacated as moot*, 934 S.W.2d 85 (Tex. 1996). When we review the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). To sustain a legal sufficiency challenge, we must find that (1) there is a complete lack of evidence of a vital fact, (2) the court is barred by rules of evidence or law from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence to prove a vital fact, or (4) the evidence conclusively establishes the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

A directed verdict is proper when (1) a defect in a pleading renders it insufficient to support a judgment, (2) the evidence conclusively proves a fact that establishes a right to judgment as a matter of law, or (3) the evidence is insufficient to raise a fact issue. *Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.—Corpus Christi 2002, pet. denied). The trial court should enter a directed verdict when reasonable minds can only draw one conclusion from the evidence. *Vance v. My Aptartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 483 (Tex. 1984). When we review a trial court's denial of a motion for directed verdict, our review is limited to the specific grounds alleged in the motion. *Cooper v. Lyon Fin. Servs., Inc.*, 65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

When he moved for a directed verdict at trial, Royal argued that the guaranty was unenforceable under the statute of frauds because the underlying commercial

7

lease agreement was not in effect at the time he signed the guaranty. Royal argued that "the lease that ultimately went into effect signed by [Ahlgren] three days after [Royal] signed his guaranty constituted a counteroffer, which had to have been accepted by [Royal] before he had a legally valid and enforceable guaranty under Texas law."

Section 26.01(a) of the Texas Business and Commerce Code provides that certain promises or agreements are not enforceable unless in writing and signed by the person to be charged therewith or by an authorized representative. TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009). A promise to answer for the debt of another person is one such promise or agreement. *Id.* § 26.01(b)(2). In addition to the signature of the guarantor, to comply with the statute of frauds, a written promise to guarantee performance of one of the parties to a contract must clearly show (1) the parties, (2) a manifestation of intent to guarantee the obligation, and (3) a description of the obligation. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The guaranty in this case provides in part as follows:

GUARANTY TO COMMERCIAL LEASE CONCERNING THE LEASED PREMISES AT 4410 Burnet Road, Austin, TX between Frank Ahlgren (Landlord) and Jennifer Brown (Tenant) that commences on July 1, 2007.

A. In consideration for Landlord leasing the leased premises to Tenant, the undersigned Guarantors guarantee Tenant's performance under the above-referenced lease.

B. If Tenant fails to timely make any payment under the lease, Guarantors will promptly make such payment to Landlord . . . .
. . . .

D. Guarantors guarantee Tenant's obligations under the lease regardless of any modification, amendment, renewal extension, or breach of the lease. Filing for bankruptcy by Tenant will not diminish Guarantors obligations under this guaranty.

8

E. Guarantors waive any rights to notices of acceptance, modification, amendment, extension, or breach of the lease.

The writing clearly shows the parties to the agreement, an intent to guarantee the obligation, as well as the obligation that was guaranteed. Therefore, Royal's signature and the terms of the guaranty satisfy the requirements for an enforceable guaranty under Section 26.01.

Jennifer and Royal argue that the guaranty agreement is unenforceable because the underlying commercial lease had not been executed by both Jennifer and Ahlgren at the time that the guaranty agreement was executed. Specifically, Jennifer and Royal contend that the promise to "guarantee . . . performance under the above-referenced lease" necessarily "assumes by its own language used that a 'lease' already existed, when it didn't." Jennifer and Royal cite *Hartford Fire Insurance Co. v. C. Springs 300, Ltd.* to support their contention that a promise to guarantee performance of a contract to be made in the future is not enforceable under the statute of frauds. 287 S.W.3d 771 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Although we agree that Jennifer and Royal have correctly stated the law, *Hartford* is distinguishable because the agreement there contained "'futuristic' language" that is not present in the guaranty here. *Id.* at 778. In *Hartford*, a letter from the purported guarantor contained the following sentence: "[U]pon receipt of an acceptable contract, Hartford Fire Insurance stands ready to issue 100% performance and payment bonds in the full amount of the contract." *Id.* The court concluded that this is "'futuristic' language" that "clearly contemplates a future contract, and cannot be reasonably construed as reflecting a present intent by Hartford" to guarantee performance. *Id.* The court reasoned that the phrase "upon receipt of an acceptable contract" clearly contemplated that the guarantor would first receive an acceptable contract and that "'stands' ready to issue" indicated that

9

Hartford lacked the present intent to be bound at the time the letter was signed. *Id.* at 778–79.

Here, there is no "futuristic language." Moreover, the agreement by its own terms does not expressly require that the terms of the underlying lease be determined at the time of execution of the guaranty because it states that "Guarantors waive any rights to notices of acceptance . . . of the lease" and that "Guarantors guarantee Tenant's obligations under the lease regardless of any modification, amendment, . . . or breach of the lease." In the agreement, the parties expressly stated that performance was guaranteed and that there were no conditions to Royal's obligation.

To the extent that Jennifer and Royal argue that the guaranty is not enforceable because the underlying lease had not yet been executed or because the terms of the lease changed after execution of the guaranty, Jennifer and Royal blur the requirements for the enforceability of the underlying lease and those of the commercial lease guaranty. Jennifer and Royal's argument would require that we expand the rule that the guaranty must merely describe the obligation being guaranteed. Thus, we cannot conclude that the trial court erred when it denied the motion for directed verdict. Jennifer and Royal's fourth issue is overruled.

We affirm the judgment of the trial court.


                                              JIM R. WRIGHT

October 31, 2013                              CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

10