**Daniel Martin GREENBERG et al., Appellants,**

v.

**ROYAL COMMERCE BANK NATIONAL ASSOCIATION, Appellee.**

**No. 5250.**

Court of Civil Appeals of Texas, Eastland.

Feb. 15, 1979.

Rehearing Denied March 8, 1979.

Michael Greenberg, Irving, for appellants.

Donald R. Rector, Smith & Rector, Dallas, for appellee.

McCLOUD, Chief Justice.

The controlling issue in this summary judgment case is whether a deed of trust promissory note providing for interest at a rate of less than ten percent per annum and secured by a secondary deed of trust on a homestead is governed by Tex.Rev.Civ.Stat. Ann. art. 5069–1.01 et seq., or Tex.Rev.Civ. Stat.Ann. art. 5069–5.01 et seq.

On August 19, 1977, plaintiffs, Daniel Martin Greenberg and wife, Sandra Kay Greenberg, executed a deed of trust promissory note, in the principal sum of $10,010, made payable to defendant, Royal Commerce Bank National Association. The note, which was secured by a secondary deed of trust covering plaintiffs' homestead, provided for interest at the rate of 9.95 percent per annum. The money received for executing the note was used to construct a swimming pool on plaintiffs' premises. Plaintiffs sued defendant, asserting that the note violated Article 5069– 5.02(5) because it provided that if the note was placed in the hands of an attorney for collection, or if collected by suit, the plaintiffs agreed to pay ten percent additional on the principal and interest then due as attorney's fees. The note was not in default.

Both parties filed motions for summary judgment. The court denied plaintiffs' motion and granted defendant's motion. Plaintiffs have appealed. We affirm.

Plaintiffs argue that the note is a "secondary mortgage loan" as defined in Article 5069–5.01, and since it contains a provision authorizing the holder to collect attorney's fees in the event of default, it violates Article 5069–5.02, which provides in part:

(5) In addition to the authorized charges provided in this Chapter no further or other charge or amount whatsoever shall be directly, or indirectly, charged, contracted for, or received. This includes (but is not limited by) all charges such as fees, compensation, bonuses, commissions, brokerage, discounts, expenses and every other charge of any nature whatsoever, whether of the types listed herein or not. Without limitation of the foregoing, such charges may be any form of costs or compensation whether contracted for or not, received by the lender, or any other person, in connection with (a) the investigating, arranging, negotiation, procuring, guaranteeing, making, servicing, collecting or enforcing of a loan; . . . .

Article 5069–5.01 provides in part:

(1) As used in this Chapter, "secondary mortgage loan" means

(a) a loan made to any person not to be repaid in ninety days or less which is secured, in whole or in part, by any lien or security interest or any interest in real property improved by a dwelling designed for occupancy by four families or less, which property is subject to the lien of one or more liens or security interests, prior mortgages or deeds of trust, or

(b) the purchase of any interest in an existing secondary mortgage loan from the mortgagee made to secure such a loan.

(2) On or after the effective date of this Chapter, no person, except a bank, savings and loan association or credit union doing business under the laws of this State or of the United States and any person licensed to do business under the provisions of Chapter 3 of this Subtitle, shall engage in the business of making secondary mortgage loans and contract for, charge or receive, directly or indirectly in connection with any such loan, any charge for interest which exceeds ten percent per annum on unpaid principal balances and any lawful charge for compensation, consideration, expense, or any other thing incident to or in connection with the loan which exceeds the amounts a person authorized hereunder would be permitted to charge under Article 5.02(5).

Defendant argues that since the note provided for interest at a rate of less than ten percent per annum, Article 5069–1.01 et seq. governs the transaction and Article 5069–5.01 et seq. is not applicable. We agree.

Article 5069–1.02 provides:

Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.

Title 79 of the Revised Civil Statutes of Texas was revised, effective October 1, 1967. Subtitle One consists of "Chapter 1" entitled "Interest," and is codified in Article 5069–1.01 et seq. Subtitle Two of Title 79 consists of Chapters 2 through 8, entitled "Consumer Credit," and is codified in Articles 5069–2.01 through 5069–8.01. It is clear that Subtitle Two, the Consumer Credit Code, which includes Article 5069–5.-01 et seq. (Chapter 5), was enacted to permit, under certain conditions, authorized parties to make regulated loans and charge "time-price differential" (Chapters 6 and 7), or interest in excess of ten percent per annum (Chapters 3, 4 and 5). Article 5069–5.02(1) expressly provides that the listed regulations apply to loans "made under the authority of this Chapter." Under Article 5069–5.02(1), an authorized lender may contract for and receive on a secondary mortgage loan, made under the authority of Article 5069–5.01 et seq., an add-on interest

**578**

charge which exceeds the ten percent per annum interest charge provided for in Article 5069–1.02. Article 5069–5.01 et seq. governs the transaction if an authorized party makes a secondary mortgage loan and the rate of interest exceeds ten percent per annum.

The court in *Crowder v. First Federal Savings & Loan Association of Dallas,* 567 S.W.2d 550 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.) stated:

> Before the Consumer Credit Code was enacted in 1967, any loan with an effective rate of interest greater than 10% per annum was considered usurious. Under the Credit Code, lenders are now permitted to charge effective rates of interest greater than 10% per annum, provided they comply with the requirements under the Code. Thus, lenders may choose between charging up to 10% per annum free of restrictions (under subtitle 1), or charging an effective rate of interest greater than 10% and be subject to the relevant regulations under the Credit Code. . . .

In *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.), while discussing Article 5069–6.01 et seq., the court said:

> In 1967, the Legislature enacted the Credit Code which preserved the time-price doctrine but which imposed various disclosure requirements and limitations when time-price differential was charged. Art. 5069–6.01 et seq. On the other hand, Chapter 1 of the Credit Code allows interest up to 10 percent per annum, and imposes no disclosure requirements nor prohibitions. Art. 5069–6.01 et seq. By the Credit Code, sellers are permitted to choose between interest up to 10 percent per annum, free of restrictions (Chapter 1); or to charge time-price differential at a much higher yield and be subject to closer regulations (Chapter 6).

We hold that the loan in question, which provided for interest at the rate of 9.95 percent per annum, is not governed by Article 5069–5.01 et seq. We note, however, even if the interest rate exceeded ten percent and the loan was "made under the authority" of "Chapter 5" (Article 5069–5.01 et seq.), the provision providing for attorney's fees would not violate Article 5069–5.02(5). *Crowder v. First Federal Savings & Loan Association of Dallas,* 567 S.W.2d 550 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.).

We have considered all points of error, and all are overruled.

Judgment of the trial court is affirmed.