Opinion filed January 25, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00107-CV
_____

**DURK DEBOER, Appellant**

**V.**

**ATTEBURY GRAIN, LLC, Appellee**

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV35746**

## O P I N I O N

Appellant, Durk DeBoer, appeals an adverse judgment resulting from a bench trial. Appellee, Attebury Grain, LLC, brought suit for Appellant's breach of two contracts after Appellant refused to accept shipment of wheat and corn as per the contracts. Following a bench trial, the trial court entered a judgment for Appellee and awarded Appellee actual damages, prejudgment interest, and attorney's fees in the amount of $1,188,640.96. In five issues, Appellant contends that the trial court

abused its discretion in awarding contract damages, prejudgment interest, and attorney's fees and that the trial court erred because it "forced" Appellant to proceed to trial without counsel. We modify and affirm in part, and reverse and remand in part.

*Factual and Procedural History*

Appellant is a "feed supplier and dairyman" in Dublin, Texas, where he buys grain from sellers such as Appellee. Doing business as DFS Premium Feed Supplements, Appellant enjoyed a business relationship with Appellee that was established around 2012. Appellant testified that, before the contracts at issue, the parties were able to "work[] it out" when issues between them would arise. Appellee entered into a credit agreement with Appellant in 2013. In 2014 and 2015, Appellant entered into contracts with Appellee for the purchase of corn and wheat. The sale of corn to Appellant is a single contract, but the sale of wheat encompasses five contracts: one larger contract agreeing to the amount and terms, and four auxiliary agreements, each speaking to the delivery amount and date of a specific shipment to Appellant.

Initially, Appellant was not a party to the wheat contracts. Appellee sold the wheat to a third party, Grand Canyon Dairy, LLC, before Appellant agreed to assume Grand Canyon Dairy's wheat obligation. Appellee sent Appellant the amended contract, Contract No. 1496-1A, on July 24, 2014. Appellee also sent four other documents, which were assigned Contract Nos. 345000171, 345000172, 345000173, and 345000174 (Contract Nos. 171–174, respectively). These auxiliary contracts specified the delivery date and amount of each shipment under Contract No. 1496-1A. Neither party objected to the terms of any of the contracts. Appellant fulfilled his obligation under Contract No. 171, but he refused shipment under the remaining four wheat contracts throughout 2015. During this time, Appellant also

entered into Contract No. 290, a contract to purchase corn from Appellee, but Appellant ultimately refused shipment of the corn as well. The trial court concluded that by refusing these corn and wheat shipments, Appellant had breached the contracts (except for Contract No. 171).

As a result of Appellant's breaches, Appellee sent two letters, one on August 30, 2016 for the corn contract and one on December 15, 2017 for the wheat contracts. Both letters demanded payment on the outstanding balance of each contract and demanded arbitration if full payment was not made. Appellant did not pay and notice of arbitration was given to Appellant on October 25, 2017.

Appellant retained Amber Miller of the law firm of Crenshaw, Dupree, and Milam, L.L.P. because the firm specialized in arbitration. However, "[b]ased upon communications with [Appellee] and [Appellant's] refusal to arbitrate," the National Grain and Feed Association dismissed and closed the arbitration case on November 13, 2019. Before then, however, Appellee initially filed suit against Appellant and Grand Canyon Dairy on April 18, 2019. Appellee then nonsuited Grand Canyon Dairy and proceeded exclusively on its claims against Appellant.

On January 11, 2022, nine days before trial, Miller filed a motion to withdraw. The motion asserted that Appellant had not paid counsel, and that Appellant had been given reasonable warning that further failure to pay would result in her withdrawal. The motion additionally stated that continued representation without payment would result in an unreasonable financial burden on Miller and the firm, preventing her and the firm from further representing Appellant in the matter. Appellee filed its second amended petition the following day. The trial court set a hearing on the motion to withdraw for January 20, 2022, the same date and time as the final hearing. Miller then filed an amended motion to withdraw on January 19 at 4:50 p.m., asserting that Appellant had agreed to her withdrawal. The motion is

3

silent as to which attorney's substitution of representation was proposed. *See* TEX. R. CIV. P. 10.

On the morning of trial, the trial court addressed Miller's amended motion to withdraw. Despite the trial court's notice, Miller was not present at the hearing, but another attorney Russell King, who is not with Miller's firm, was present and asked to address the court in chambers regarding the matter before entering an appearance. The trial court held an off-the-record conference in chambers with King and Appellee's counsel. On the record, the trial court stated that King did not enter an appearance and "did not -- or has done nothing as far as representation in this matter to enter [an] appearance for [Appellant]," noting that King "might have been misled that it was set today solely on a motion to withdraw as opposed to a final hearing." Appellant denied that he agreed to Miller's motion to withdraw. Based on Appellant's appearance and his representations to the court, the trial court denied Miller's amended motion to withdraw. The trial court then took a short recess for the court coordinator to contact Miller. The trial court summarized the contact with Miller on the record:

> During the break, as directed, the court coordinator made contact with Ms. Miller, the attorney of record, advised her that her motion to withdraw had been denied[,] and that this matter would be heard for final at 1:00 o'clock.

> Ms. Miller advised that she would be physically unable to attend. And I directed the court coordinator to give her an opportunity to hire someone to stand in for today's hearing.

> Shortly thereafter, I reconsidered and advised the court coordinator to make contact again with Ms. Miller and advise her that if she was going or would attempt or was in the process of getting someone to appear that I would wait until 1:00 o'clock to start the final hearing. Otherwise, if she was not going to get someone to appear for her or appear herself that I would start at 11:00 o'clock.

4

The court coordinator has advised the Court that in that phone conversation Ms. Miller stated: You might as well start at 11:00 o'clock.

Trial started at 11:05.

When the trial court asked Appellant if he was ready to proceed, Appellant responded with a simple and unconditional "I'm ready." After a brief trial that totaled fifty-four pages of transcript, the trial court found for Appellee. In its "Findings of Fact," the trial court determined that "Durk de Boer had the knowledge and skill in the purchase and sale of grain to qualify as a merchant." There was no testimony that Appellant did not have the knowledge or skill peculiar to the transaction. Appellant now contests the sufficiency of the evidence upon which the trial court rested its conclusions regarding Appellant's merchant status, as well as the awards of prejudgment interest and attorney's fees. In addition, Appellant argues that the trial court committed harmful error when it "force[d]" him to go to trial.

*Analysis*

I. *Appellant's Merchant Status*

In Appellant's first issue, he argues that there is insufficient evidence to establish a valid and enforceable contract. Specifically, Appellant contends that Appellee's breach-of-contract claim expressly alleged Appellant's merchant status "as a basis for making an otherwise unenforceable contract enforceable," and the trial court's conclusion that Appellant is a merchant "has no evidentiary support." *See* TEX. BUS. & COM. CODE ANN. § 2.201(b) (West 2009) ([A] contract for the sale of goods is enforceable between merchants "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements . . .

5

against such party unless written notice of objection to its contents is given within ten days after it is received.").

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

The trial court found that Appellant was a merchant as defined by Section 2.104 of the Texas Business and Commerce Code and that Appellant had not pleaded any affirmative defense that extinguished Appellee's right to collection. *See* BUS. & COM. § 2.104(a) (broadly defining "merchant," in relevant part, as "a person who deals in goods of the kind *or* otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction") (emphasis added). Appellant admitted at trial that he had been dealing in grain with Appellee since 2012. He was familiar with the types of contracts sued upon, had both a practical understanding of these types of contracts, and he knew that there were involved industry trade rules and regulations. As the factfinder, based on the testimony provided, including Appellant's testimony, the evidence supports the trial court's finding of fact and conclusion of law that Appellant qualified as a "merchant" as defined by Section 2.104(a).

Moreover, throughout the proceedings, Appellant did not plead any affirmative defenses and did not give any indication or provide evidence that he was not a merchant. The statute of frauds is an affirmative defense to a breach-of-contract claim. TEX. R. CIV. P. 94. "The party pleading the statute of frauds bears the initial burden of establishing its applicability." *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). If a party does not plead the statute of frauds as an affirmative defense, he risks waiving it. *W. Tex. Landscape, Inc. v. Meneses*, No. 11-19-00371-CV, 2021 WL 4201602 at *5 (Tex. App.—Eastland Sept. 16, 2021, no pet.); *Texan Pearl, LLC v. Koegel*, No. 03-14-00556-CV, 2015 WL 6119491 at *3 (Tex. App.—Austin Oct. 14, 2015, no pet.). Appellant did not plead the statute of frauds as an affirmative defense in his original answer or otherwise.

Further, when Appellee objected, based on Appellant's status as a merchant, to Appellant's line of questioning regarding whether the wheat contracts bore his

"affirmative signature" showing that Appellant "agree[d] to this contract," Appellant did not dispute Appellee's characterization that he was a merchant. We find that sufficient evidence was presented in support of the trial court's finding of fact that Appellant had the knowledge and skill to qualify as a merchant, and its conclusion of law that Appellant qualified as a merchant under Section 2.104. In light of the evidence, the trial court did not err in concluding that Appellant acted as a merchant in these transactions and that valid contracts were formed. Appellant's first issue is overruled.

## II. *Prejudgment Interest*

Appellant's second and third issues relate to the trial court's award of prejudgment interest. In his second issue, Appellant contends that the trial court's award is not supported by legally and factually sufficient evidence because Appellee failed to establish the date on which prejudgment interest began to accrue. In his third issue, Appellant contends that Appellee "failed to establish the prejudgment interest rate."[1]

We apply an abuse of discretion standard of review when evaluating a trial court's award of prejudgment interest. *See Morales v. Morales*, 98 S.W.3d 343, 348 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied) (citing *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no writ)). "Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d

---

[1]Appellant makes no claim, nor did he plead an affirmative defense, of usury or that the contractual interest of eighteen percent as found by the trial court was usurious.

507, 528 (Tex. 1998)); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 482 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The parties may contractually agree to a rate of interest. Texas law recognizes that contracting parties are free to agree to post-maturity interest at the highest legal rate and that a contract or note which provides interest at a specified rate is enforceable. *See Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 132 (Tex. App.—Eastland 2014, pet. denied); *Pineda v. PMI Mortg. Ins. Co.*, 843 S.W.2d 660, 670 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *Dodson v. Citizens State Bank*, 701 S.W.2d 89, 91–93 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.); *see also All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 497–98 (Tex. App.—Texarkana 2005, no pet.). "The parties to a written agreement may agree to an interest rate . . . that does not exceed the applicable weekly ceiling." TEX. FIN. CODE ANN. §§ 303.002 (West 2016), 304.002 (rate is lesser of rate specified in contract or eighteen percent), 303.009 (providing the maximum and minimum weekly, monthly, quarterly, or annualized ceiling).[2] In Appellee's extension of credit, there is support in the record for the trial court's finding that eighteen percent prejudgment interest was agreed to by Appellant. The parties had a history of grain business transactions together. It appears from the record that at the relative inception of their dealings, Appellant received and

---

[2]*See Whitehead Utils., Inc. v. Emery Fin. Corp.*, 697 S.W.2d 460, 461 (Tex. App.—Beaumont 1985, no writ) (holding that Article 5069–1.03, a precursor to Section 302.002, does not apply when the parties contracted for the "highest contract rate of interest Lessor may charge lessee under applicable law"); *cf. All Seasons Window and Door Manufacturing, Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 499, 502 (Tex. App.—Texarkana 2005, no pet.). ("All deferred payments shall bear interest from the time they are due until paid at the maximum rate permitted by the applicable law."); *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 334 (Tex. App.—Texarkana 1999, no pet.) (Section 302.002 does not apply when parties agreed to zero percent interest); *Bundrick v. First Nat'l Bank of Jacksonville*, 570 S.W.2d 12, 15 (Tex. App.—Tyler 1978, writ ref'd n.r.e.) (allowing collection of the maximum legal rate of interest for a contract that provided for "interest at the highest legal contract rate from the date of such default").

executed a credit agreement on July 24, 2013.[3]   It begins with the following language:

> BY THIS AGREEMENT, the undersigned ("BUYER") agrees to purchase goods and services from ATTEBURY GRAIN, LLC ("SELLER") upon the following terms and conditions.
>
> SELLER may permit BUYER to make purchases on credit from time to time. The price for goods and services purchased will be due upon receipt of invoice.
>
> BUYER agrees to pay a finance charge at the rate of 18% per annum (1.5% per month) on any balance remaining unpaid after the 30th day following invoice date.
>
> . . . .
>
> SELLER may place credit limits upon BUYER'S account under this same agreement and may raise or lower these limits from time to time without notice to the BUYER.
>
> SELLER may alter the terms of this CREDIT AGREEMENT at any time upon notice to BUYER as provided by law.  Any change will be applied to existing account balances as well as to future purchases. If BUYER rejects any such change, BUYER must pay the existing account on the terms as they existed prior to the change.

By its terms, the credit agreement does not appear to be confined to a single specific transaction.  For example, it references "future purchases," "purchases on credit from time to time," and raising or lowering credit limits "from time to time."  Thus, the credit agreement's terms are continuing and applicable to future transactions between the parties.  With no amendment or similar document of differing terms subsequently entered into by the parties, the trial court as the finder of fact was free

---

[3]In his brief, Appellant refers to the credit agreement as "the original contract."

to conclude that Appellant, and a buyer under the circumstances, would have understood the continuing terms upon which credit would be extended in any transaction for goods and services to be at eighteen percent interest on all outstanding balances, under which the parties had, from the outset, agreed to do business. *Cf. Adams v. H & H Meat Products, Inc.*, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (calculating interest rate using the rate set forth on invoices exchanged between the parties); *Montanaro v. Montanaro*, 946 S.W.2d 428, 431 (Tex. App.—Corpus Christi–Edinburg 1997, no writ) (finding an appropriate interest rate as implied by other terms of the agreement).

We conclude that the parties agreed to a rate of eighteen percent for prejudgment interest. We next address Appellant's argument that Appellee failed to establish the accrual date from which prejudgment interest was to be calculated—and that therefore the trial court's prejudgment interest award was not supported by legally and factually sufficient evidence.

As stated in the credit agreement, the accrual of finance charges, which functioned as interest in the credit agreement,[4] was to begin "on any balance remaining unpaid after the 30th day following invoice date." Neither the credit agreement nor any other document included in the record defines the term, "invoice," and the record does not include a traditional commercial document or any document that is labeled as an "invoice." As such, the credit agreement does not show that the term "invoice" is used in a technical or different sense in the

---

[4]Appellee argues that the "finance charge" expressed within the credit agreement was interest. The inclusion of certain additional charges other than the interest charges shown on the face of loan documents often amounts to a means by which interest is exacted; depending on how they function within the transaction, such charges may be considered interest. *See Crowder v. First Federal Savings and Loan Association of Dallas*, 567 S.W.2d 550, 553 (Tex. App.—Tyler 1978, writ ref'd n.r.e.). Appellant also admits that the credit agreement asserted a "default interest rate" "of 18% or 1.5% per month."

agreement. When a term is not defined in an agreement, we give the term its plain, ordinary, and generally accepted meaning. *See BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 304–05 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996). Black's Law Dictionary defines "invoice" as "an itemized list of goods or services furnished by a seller to a buyer, usu. specifying the price and terms of sale; bill of costs." *Invoice*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, Merriam-Webster's dictionary defines "invoice" as "an itemized list of goods shipped usually specifying the price and the terms of sale." *Invoice*, MERRIAM-WEBSTER'S DICTIONARY (11th ed. 2020) (cross-referencing the term "bill," which is defined as "an itemized account of the separate cost of goods sold, services performed, or work done."). Collins English Dictionary defines it as "a document that lists goods that have been supplied or services that have been done, and says how much money you owe for them." *Invoice*, COLLINS ONLINE DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/invoice (last visited January 23, 2024). Consistent with these definitions, an invoice need not take any specific form as long as it states the product or service provided and its price. *See CCC Group, Inc. v. Enduro Composites, Inc.*, 637 S.W.3d 153, 169 (Tex. App.—Houston [14th Dist.] 2021), *judgment set aside, opinion not vacated*, No. 14-19-00204-CV, 2022 WL 34632 (Tex. App.—Houston [14th Dist.] Jan. 4, 2022, no pet.) (defining the term "complete invoices" for the product of siding "must describe the siding and state the price charged for the siding").

Here, Appellee introduced, and the trial court admitted, demand letters sent to Appellant that indicated the amount of corn and wheat Appellant contracted to purchase, which referenced the specific sales contracts that included the quantity of goods and the prices, the balance due, the number of bushels purchased, and the date

on which payment is required. As a result, the record reflects the dates upon which invoice-type information was sent to and received by Appellant in the form of demand letters on Appellee's letterhead. Accordingly, we cannot find that the trial court abused its discretion in its conclusion of law that Appellant "agreed to all sums due and owing" using eighteen percent in its calculation of prejudgment interest.

The trial court did not explain the basis for its calculation of prejudgment interest, nor did it state the accrual date(s) on which it found that interest began in its findings of fact or conclusions of law; however, in its findings of fact, the trial court described the demand letters Appellee sent to Appellant and the date the letters were sent. Appellee contends that the calculations were based on the dates established by the demand letters. Under the agreed upon terms found in the credit agreement, the trial court should have calculated the accrual of prejudgment interest from the thirtieth day following the invoice dates—that of the Appellee's demand letters that set out the relevant information needed to constitute an "invoice" as contemplated by the agreement. The record shows that Appellant received these demand letters. In response to Appellee's original motions for summary judgment, Appellant made the following judicial admissions[5]

> [From 2014 until 2016], Plaintiff and Defendant entered into a series of agreements to acquire significant quantities of wheat.
>
> Defendant did not receive formal notice from Plaintiff concerning any alleged breach of contract claim related to any of the various transactions [involving wheat] until the [sic] December 14, 2017.

---

[5]*See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (assertions of fact, not pled in the alternative, in a response to a summary judgment motion are judicial admissions).

Defendant did not receive formal notice from Plaintiff concerning any alleged breach of contract claim related to any of the transactions involving corn between the parties until the [sic] August 30, 2016.

Correspondingly, the record includes the two demand letters sent by Appellee to Appellant:

A formal demand letter alleging breach of contract regarding "Sale of 145,454.57 bushels of Soft Wheat under Sales Contract No. 345000172 dated June 24, 2014" addressed to Appellant was dated December 15, 2017.

A formal demand letter alleging breach of contract regarding "Sale of 440,000 bushels of #2 Yellow Corn under Sales Contract No. 345000290 dated July 21, 2015" addressed to Appellant was dated August 30, 2016.

Accordingly, the record shows that the "invoice" on Appellee's wheat-contract claims was on December 15, 2017, thirty days from when prejudgment interest began to accrue (January 15, 2018). The record shows that the "invoice" on Appellee's corn-contract claim was August 30, 2016, thirty days from when prejudgment interest began to accrue (September 30, 2016).

Appellant does not complain of the trial court's calculation of principal amounts—$436,645.00 on the wheat contracts and $126,098.32 on the corn contract—as stated in the judgment. Prejudgment interest is computed as simple interest; it does not compound. *See* FIN. § 304.104; *Ventling*, 466 S.W.3d at 153. Therefore, prejudgment interest on the principal amount for wheat contracts is $316,537.72,[6] and for the corn contract it is $120,764.19,[7] for a total of $437,301.91 in prejudgment interest. Appellant is entitled to recover contractual prejudgment

---

[6]$436,645 (principal) x .18 (prejudgment interest rate) divided by 365 (days in year) x 1,470 days (January 15, 2018 to January 23, 2022).

[7]$126,098.32 (principal) x .18 (prejudgment interest rate) divided by 365 (days in year) x 1,942 days (September 30, 2016 to January 23, 2022).

interest as explained above. An appellate court may determine the proper interest rate to be applied in calculating prejudgment interest, calculate prejudgment interest owed on judgment in a breach-of-contract case, and reform a trial court's judgment accordingly. *See Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 514–15 (Tex. App.—El Paso 2018, no pet.); *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 452–53 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We have done so. Accordingly, we sustain Appellant's second and third issues in part, and we modify the judgment to reflect the proper amount of prejudgment interest: $437,301.91.

III. *Attorney's Fees*

In Appellant's fourth issue, he argues that there is insufficient evidence to support the trial court's award of attorney's fees. Attebury's trial counsel, Grant Zachary Gibson, briefly testified and stated that Appellee had incurred $37,090.75 in attorney's fees. The trial court awarded $31,964.75 in attorney's fees to Appellee.[8]

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses that discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles, or if its decision is not supported by legally or factually sufficient evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *see also Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (explaining that legal and factual sufficiency of the evidence are relevant factors in determining whether trial court abused its discretion).

---

[8]We note that the trial court awarded Appellee its requested attorney's fees ($37,090.75) on the record but that its judgment reflects that it awarded $31,964.75.

A prevailing party may recover reasonable attorney's fees for a breach-of-contract claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West Supp. 2023). "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Whether the fees requested by a prevailing party are reasonable and necessary are both questions of fact to be determined by the factfinder. *Id.* at 498. The lodestar method sets forth a two-step inquiry to ascertain what constitutes reasonable and necessary attorney's fees. *Id.*

First, the factfinder must determine the reasonable hours worked by counsel multiplied by the reasonable hourly rate for counsel's services. *Id.*; *El Apple I*, 370 S.W.3d at 760. At a minimum, the fee claimant's proof of reasonable hours should include "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 498. This base lodestar calculation approximates "the reasonable value of legal services provided" and, when supported by sufficient evidence, is presumed to reflect "the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 498–99.

Second, because other considerations may justify an enhancement or reduction to the base lodestar figure, the factfinder must determine "whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id.* at 501. This step allows for the enhancement or reduction of the base lodestar figure "when considerations not already accounted for in the first step" establish that the base lodestar figure

represents either an unreasonably low or an unreasonably high fee award. *Id.* at 502. "[C]onsiderations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (noting that *Arthur Andersen* lists factors "that may justify an adjustment" so long as they are noncumulative of the base-lodestar considerations) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees. *Rohrmoos Venture*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to determine attorney's fees when attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

Here, Appellee's proof of reasonable hours falls short of a base lodestar calculation. Through three pages in the record of his testimony, counsel established some, but not all, of the minimum requirements of *Rohrmoos*. *See Rohrmoos Venture*, 578 S.W.3d at 498.

Gibson testified that another partner, Wyatt Brooks, was originally assigned to the case and worked on the file but Gibson "took control of the file" when Brooks experienced medical issues. Gibson testified that both his and Brooks's hourly rate

was $300, which was a reasonable rate given their skill and experience. Gibson testified that "it took a substantial amount of time and effort" to work on the case pretrial, including their work during the failed arbitration, drafting petitions, addressing the motion to transfer venue, drafting discovery, filing motions and responses, and taking a deposition. However, he did not testify as to "approximately when [these] services were performed." *Id.* at 494–95. The only testimony regarding the timeframe of the case indicated that Brooks had not "done anything on it in quite some time" due to the COVID-19 pandemic. Gibson did not give an estimate of the reasonable amount of time to perform all of the services he described, nor did he reveal how these hours were allocated to the various tasks mentioned, but he did present a figure—$37.090.75—based on their $300 per hour rate, which indicates approximately 124 hours worked. There is an absence of testimony or other evidence that specifies how long Gibson and Brooks spent on the enumerated activities or the specific total of hours spent during their representation.

Here, there is evidence of the particular services performed, who performed those services, and the reasonable hourly rate for each person performing such services. But there is no evidence of approximately when the services were performed or the reasonable amount of time required to perform the services. Similar to *El Apple I*, "[t]he court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable." *El Apple I*, 370 S.W.3d at 763. Gibson did not present time records or other documentary evidence or state when those services were performed or whether the time expended was reasonable. The brief recitation of activities involved in the case and the reasonable rate of the attorneys did not provide the trial court a basis upon which to conduct a meaningful review of the award.

We conclude that the record does not contain sufficient evidence to establish a base lodestar calculation. Therefore, the trial court abused its discretion when it awarded $31,964.75 in attorney's fees. We sustain Appellant's fourth issue.

IV. *Being Forced to Trial Without Counsel*

In his fifth issue, Appellant argues that the trial court erred by "forcing" him to proceed to trial without counsel. Appellant contends that the trial court's act of forcing him to trial without counsel was the functional equivalent of the trial court granting his counsel's motion to withdraw. We disagree with Appellant's contention because, as we have previously noted, the trial court overruled counsel's motion to withdraw.

Here, Appellant contends that the trial court should have sua sponte granted a continuance in light of counsel's failure to appear. That might be the case if the trial court had granted counsel's motion to withdraw. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Jackson v. Jackson*, 556 S.W.3d 461, 471 (Tex. App.—Houston [1st Dist.] 2018, no pet.). But here the trial court denied counsel's motion to withdraw. It is significant that Appellant subsequently made an unconditional announcement of ready. "Once both parties announce ready for trial unconditionally, they commit themselves to a disposition of the action unless relieved of this obligation by the grace of the court, and neither of them has an unqualified right to withdraw its announcement or to obtain a continuance." 4 MCDONALD & CARLSON TEX. CIV. PRAC. § 21:3 *Withdrawing announcement of ready* (2d. ed.).

To support his argument, Appellant cites to cases that analyze the trial court's discretion to grant a continuance. *See Villegas*, 711 S.W.2d at 626; *Kinder Morgan Prod. Co., LLC v. Scurry Cty. Appraisal Dist.*, 637 S.W.3d 893, 916 (Tex. App.—Eastland 2021, pet. denied); *Jackson v. Jackson*, 556 S.W.3d 461, 471 (Tex. App.—

Houston [1st Dist.] 2018, no pet.); *Wilborn v. Life Ambulance Servs. Inc.*, 163 S.W.3d 271, 274 (Tex. App.—El Paso 2005, pet. denied). But Appellant did not seek a continuance either prior to or during the trial.

As a prerequisite to presenting a complaint for appellate review, the record must demonstrate, among other things, that the complaint was made to the trial court by a timely request, and that the trial court ruled on the request or refused to do so and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a)(1). At trial, Appellant made no complaints about proceeding to trial. Instead, when the trial court asked if he was ready to proceed, Appellant responded "I'm ready," with no further questions or elaboration.

Appellant asserts that his then-prospective counsel, King, stated in his verified motion for new trial that "the Court denied the Motion for Continuance and ordered Defendant to trial . . . [a] fact [that] was not challenged or controverted in the court below." In this regard, Appellant's motion for new trial asserts that "Defendant requested a continuance so he could secure new counsel" and that the trial court denied the continuance. At oral argument, Appellant specified that King requested an oral motion for continuance in chambers. On the record, the trial court did mention an in-chambers meeting with King and Gibson prior to trial, but it did not mention any motion for continuance: requested, ruled upon, or otherwise.

This alleged oral motion for continuance, even taken at face value, presents further problems. First, any request was not actually made by the defendant, but by prospective—not retained—counsel. Therefore, "Defendant," Appellant himself, did not make this request. The request was made by a lawyer who did not represent Appellant. This is confirmed by the trial court's statement that King had "done nothing as far as representation in this matter to enter [an] appearance for [Appellant]."

20

Second, any oral motion for continuance conflicts with Appellant's subsequent representation that he was ready to proceed. Announcing "ready" waives the right to subsequently seek a delay based upon any facts which are, or with proper diligence should have been, known at the time. *Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ). At the time Appellant announced ready, Miller had been contacted and she had refused to make an effort to attend her client's trial. Appellant was aware that Miller would not be present when the trial court asked if he was ready to proceed and he announced, "I'm ready."

Third, the failure to file a written continuance risks waiving the issue. Many intermediate courts—ours included—have noted that an oral continuance generally does not preserve error. *See, e.g.*, *Kinder Morgan Prod. Co., LLC*, 637 S.W.3d at 915 (citing *In re Marriage of Harrison*, 557 S.W.3d 99, 118 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Dempsey v. Dempsey*, 227 S.W.3d 771, 776 (Tex. App.—El Paso 2006, no pet.); *Taherzadeh v. Ghaleh-Assadi*, 108 S.W.3d 927, 928 (Tex. App.—Dallas 2003, pet. denied); *see also Louison v. Caddette*, No. 01-22-00034-CV, 2023 WL 3358162, at *8 (Tex. App.—Houston [1st Dist.] May 11, 2023, no pet.) (mem. op.); *Redmond v. Kovar*, No. 09-17-00099-CV, 2018 WL 651272, at *3 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.). Here, the alleged oral continuance is not in the reporter's record, and it is substantiated solely by post-trial claims.

Even if we considered the denial of any continuance on the merits, we would overrule this issue. A motion for continuance should be in writing. TEX. R. CIV. P. 251–254; *Green v. Tex. Dep't of Protective & Regulatory Services*, 25 S.W.3d 213, 218 (Tex. App.—El Paso 2000, no pet.); *see In re Marriage of Harrison*, 557 S.W.3d at 118. An oral request for continuance does not preserve error. *See Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 173

(Tex. App.—Tyler 2000, pet. denied). It must be verified or supported by affidavit; if not, an appellate court will presume that the trial court did not abuse its discretion in denying the motion. *Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied). Appellant nevertheless seeks review on appeal. In doing so, he does not, however, discuss the relevant rule.

> Except as provided elsewhere in these rules, absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, *except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record*.

TEX. R. CIV. P. 253 (emphasis added). The rule for absence of counsel requires a showing of good cause before the trial court may consider granting a continuance. *Rehabilitation Facility at Austin, Inc. v. Cooper*, 962 S.W.2d 151, 155 (Tex. App.—Austin 1998, no pet.). Courts have repeatedly held that the absence of counsel does not generally constitute good cause for a continuance, even when one is sought. *See, e.g., McKinney v City of Cedar Hill*, No. 05-12-00368-CV, 2012 WL 5971178 (Tex. App.—Dallas 2012, pet. denied) (mem. op.); *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 701 (Tex. App.—Waco 2008, pet. denied); *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 527 (Tex. App.—Houston [1st Dist.] 1994, no pet.). Moreover, notwithstanding the showing of good cause, the rule states that a trial court, within its discretion, *may* grant a continuance based on the absence of counsel; therefore, whether to grant or deny a continuance remains within the trial court's discretion. *See* TEX. R. CIV. P. 253.

The record does not demonstrate that Appellant himself made a motion for continuance to the trial court. Such a motion, at best, was unwritten, not reflected in the reporter's record, and by counsel that did not represent Appellant. If such a

motion was in fact offered, we conclude that the trial court did not abuse its discretion to deny the unwritten motion. Appellant's fifth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is modified as it relates to the amount of prejudgment interest awarded, and it is reversed and remanded as to the attorney's fees. We modify the trial court's judgment to reflect an award of $437,301.91 in prejudgment interest, and we reverse the award of attorney's fees and remand that issue for further proceedings consistent with this opinion. The trial court's judgment is affirmed in all other respects.


W. BRUCE WILLIAMS
JUSTICE


January 25, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.